IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |  |
|---|---|---|
| **LANITRA JETER,** | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | 2:20-cv-01863-ACA |
| | ] | |
| **DANNY CARR, et al.,** | ] | |
| | ] | |
| Defendants. | ] | |

## MEMORANDUM OPINION AND ORDER

In her second amended complaint, Plaintiff LaNitra Jeter alleges that her former employer, Defendant Jefferson County District Attorney's Office (the "DA's Office") racially discriminated and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. (Doc. 31). The DA's Office moves to dismiss the Title VII claims for failure to timely exhaust administrative remedies and for failure to state a claim, and to dismiss the § 1981 claims for failure to state a claim. (Doc. 35).

Because Ms. Jeter has alleged facts that, taken as true and construed in her favor, state claims for race discrimination and retaliation, the court **DENIES** the motion to dismiss.

I.      BACKGROUND

In deciding a motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). Ms. Jeter attached to her operative complaint a copy of her Equal Employment Opportunity Commission ("EEOC") charge. (Doc. 31 at 16–18). Because exhibits attached to a complaint are considered a part of the pleading, the court incorporates into the description of facts the allegations made in the charge. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("[D]ocuments attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6).").

In this case, the DA's Office seeks dismissal based on Ms. Jeter's failure to timely file a charge with the EEOC as well as for failure to state a claim. (Doc. 35 at 9–10). "[E]xhaustion of administrative matters is a matter in abatement and not generally an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008). As such, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.* at

1376 (footnote omitted). To keep the merits clearly separate from the evidence relating to administrative exhaustion, the court will first describe Ms. Jeter's factual allegations, followed by the evidence the parties have presented about the exhaustion question.

1.  Allegations

Ms. Jeter is an African American woman. (Doc. 31 at 3 ¶ 10). From April 16, 2019, until March 16, 2020, she worked at the Jefferson County DA's Office as a victim service officer. (*Id.* at 2–3 ¶ 7, 3 ¶ 10). On September 23, 2019, Ms. Jeter's supervisor, Judy Yates, told Ms. Jeter that she was no longer allowed to accrue compensatory time and that she was required to provide a doctor's note for an appointment she had scheduled. (*Id.* at 5–6 ¶ 31). Ms. Yates and another supervisor, Michael McCurry, explained that this was because Ms. Jeter had been using her comp time as soon as it accrued. (*Id.* at 6 ¶ 32).

Unlike Ms. Jeter, Caucasian victim service officers were allowed to use their comp time without restrictions. For example, one Caucasian victim service officer routinely left the office early for hair appointments. (Doc. 31 at 4 ¶ 20). Another Caucasian victim service officer left the office early almost every day so that she did not have to drive home in the dark. (*Id.* at 4 ¶ 21). Neither of these officers had their use of comp time restricted. (*Id.* at 4 ¶¶ 20–21). In addition, no Caucasian victim

service officer was required to provide doctor's notes to prove how they had used their comp time. (*Id.* at 4 ¶ 22).

In October 2019, Ms. Jeter complained to the Chief Deputy District Attorney, John Roberts, about "the race discrimination she [was] experiencing from" Ms. Yates and Mr. McCurry. (Doc. 31 at 3 ¶ 13; *see also id.* at 7 ¶ 36). Mr. Roberts told her to follow her chain of command. (*Id.* at 7 ¶ 36). Ms. Jeter then "discussed [her] issues and concerns with [her] Supervisor." (*Id.* at 18). A few days later, on October 28, Ms. Jeter arrived at work to find a cutout of a black rat on her door. (*Id.* 7 ¶ 37). Ms. Yates also started restricting Ms. Jeter from using information shared at victim service officer meetings, but she did not impose the same restrictions on the Caucasian victim service officers. (*Id.* at 10–11 ¶ 56).

On November 12, 2019, Ms. Yates reinstated Ms. Jeter's ability to accrue comp time, but only starting at 7:30 a.m. (Doc. 31 at 18). A Caucasian victim service officer was allowed to accrue comp time starting at 7:00 a.m. (*Id.*). On March 16, 2020, Ms. Jeter was fired. (*Id.* at 4 ¶ 19).

2.   Administrative Exhaustion

In her operative complaint, Ms. Jeter alleges that she filed an EEOC charge on November 18, 2019, followed by a second charge on March 16, 2020. (Doc. 31 at 2 ¶ 4). In support, she attaches a printout from the EEOC's public portal, indicating that she filed a charge on November 18, 2019 and an inquiry on March

4

16, 2020. (*Id.* at 15). However, the EEOC's internal records reflect that on November 18, 2019, Ms. Jeter made only an inquiry and did not file an actual charge. (Doc. 35-1 at 3).

On March 20, 2020, Ms. Jeter sent a letter to the EEOC and the DA's Office stating that she wanted to file a charge of discrimination against the DA's Office and setting out the facts described above. (Doc. 31 at 17–18). On March 26, 2020, the EEOC assigned a staff member to the case. (Doc. 35-1 at 3). On April 3, 2020, the EEOC staff member had a pre-determination interview with Ms. Jeter and "formalize[d] [the] charge." (*Id.* at 1, 3). On the same day, Ms. Jeter electronically signed the EEOC's charge of discrimination form. (Doc. 31 at 16). The formal charge incorporates by reference Ms. Jeter's March 20 letter, which is attached to it. (*Id.* at 16–18).

At some point, the EEOC sent the DA's Office an undated letter clarifying Ms. Jeter's EEOC charge. (Doc. 43 at 2). In the letter, the EEOC writes that Ms. Jeter's March 20, 2020 letter operated as a charge of discrimination under the EEOC's regulations. (*Id.*). However, "due to an administrative error it was not formalized as a charge of discrimination until April 4, 2020." (*Id.*). The EEOC explained that its mistake "does not affect the timeliness of the Charge." (*Id.*).

3. Judicial Complaint

On November 23, 2020, Ms. Jeter filed her initial complaint in this case. (Doc. 1). After several amendments, the operative complaint names only the DA's Office and asserts claims of: (1) race discrimination, in violation of Title VII and § 1981, and (2) retaliation for complaining of race discrimination, in violation of Title VII and § 1981. (Doc. 31 at 5–12).

**II.   DISCUSSION**

The DA's Office moves to dismiss the operative complaint for failure to timely exhaust administrative remedies and for failure to state a claim. To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1. Title VII

Ms. Jeter raises a claim of race discrimination, in violation of Title VII, based on the September 23, 2019 decision to disallow her accrual of comp time and the decision to terminate her employment. (Doc. 31 at 5–9). She also raises a Title VII claim of retaliation, contending that her complaint to Mr. Roberts about the comp

time issue prompted the placement of the black rat cutout by her door and her termination. (*Id.* at 10–11).

### a. Race Discrimination Claim

The DA's Office contends that Ms. Jeter did not timely exhaust her race discrimination claim because she filed her EEOC charge on April 3, 2020, more than 180 days after Ms. Yates' September 23, 2019 disallowance of Ms. Jeter's comp time accrual. (Doc. 35 at 9).

A plaintiff seeking to file a claim under Title VII must first exhaust her administrative remedies, beginning by filing a timely charge of discrimination with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); *see* 42 U.S.C. § 2000e-5(e)(1). In Alabama, which does not have an EEOC-like administrative agency, the plaintiff must file her EEOC charge within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1178 & n.13 (11th Cir. 2005), superseded in part on other grounds by statute, Pub. L. No. 111-2, § 3.

The DA's Office changed Ms. Jeter's ability to accrue comp time on September 23, 2019. (Doc. 31 at 5–6 ¶ 31). Accordingly, Ms. Jeter had until March 21, 2020, to file a timely EEOC charge with respect to that issue. *See* 42 U.S.C. § 2000e-5(e)(1). The DA's Office argues that Ms. Jeter filed her EEOC charge on

April 3, 2020, the date on which she electronically signed the charge. (Doc. 31 at 16; Doc. 35 at 9). Ms. Jeter contends that she filed a charge on November 18, 2019, when the record indicates that she made an inquiry with the EEOC, or alternatively that her March 20, 2020 letter was a charge of discrimination. (Doc. 35-1 at 3; Doc. 42 at 2–3).

Title VII requires that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b). The EEOC's regulations provide that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9; *see also id.* § 1601.12 (setting out other requirements for the content of a charge). Verification means "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." *Id.* § 1601.3(a). But "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge. . . . Such amendments . . . will relate back to the date the charge was first received." 29 C.F.R. § 1601.12.

The Eleventh Circuit has held that an intake questionnaire can qualify as an EEOC charge of discrimination where the plaintiff "manifested her intent to activate the administrative machinery." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320 (11th Cir. 2001). In that case, the EEOC misleadingly informed the plaintiff that the

8

questionnaire constituted a charge, the questionnaire contained all the basic information required by a charge, the questionnaire indicated that it was a charge, and the EEOC treated the questionnaire as a charge. *Id.* at 1320–21; *see also Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1240 (11th Cir. 2004). In contrast, the Court in *Bost* held that a questionnaire did not qualify as a charge because there was no misleading communication between the EEOC and the plaintiff, the questionnaire did not suggest it was a charge, the evidence showed the plaintiff understood the questionnaire was not a charge, and the EEOC did not treat the questionnaire as a charge. 372 F.3d at 1240–41.

Ms. Jeter's November 18, 2019 inquiry is clearly not a "charge" as defined by Title VII. Ms. Jeter has not presented any evidence that it was in writing, under oath or affirmation, or signed. *See* 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.9. However, whether the March 20 letter counts as a "charge" is more difficult. The letter satisfies all of the requirements to be considered a charge except the verification requirement. *See* 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.9; *id.* § 1601.12. The EEOC treated the letter as a charge. (Doc. 43 at 2). And Ms. Jeter did later verify the allegations in the letter by verifying the "formalized" charge on April 3. *See* 29 C.F.R. § 1601.12; (Doc. 31 at 16–18). The DA's Office has offered no argument about the question of what constitutes a charge or whether Ms. Jeter's formalized charge relates back to the unverified letter that otherwise satisfies the

requirements of a charge.  (*See* Doc. 35 at 9–10).  The court declines to undertake that analysis in the absence of an argument from the movant.  Accordingly, at this stage, the court accepts that the March 20 letter operated as a timely charge of discrimination.

The DA's Office makes only one other argument in support of dismissal of Ms. Jeter's race discrimination claim: that Ms. Jeter could not have believed the black rat cutout being placed near her door was racially motivated because it was placed there near Halloween and if she "had believed that the placement of the cutout was personal to her, she would have taken it down immediately."  (Doc. 35 at 10).  Accepting that interpretation of the allegations would be construing them in the light most favorable to the DA's Office, which this court cannot do on a motion to dismiss.  *See Butler*, 685 F.3d at 1265.  Accordingly, the court **DENIES** the motion to dismiss Ms. Jeter's Title VII race discrimination claim.

   b.  *Retaliation Claim*

In this claim, Ms. Jeter alleges that the DA's Office violated Title VII by retaliating against her for complaining to the Chief Deputy District Attorney about the discriminatory denial of her ability to accrue comp time.  (Doc. 31 at 10–12).

Title VII prohibits employers from retaliating against an employee because the employee opposed an employment practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  To establish opposition to an unlawful employment practice,

the plaintiff must allege facts showing that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (quotation marks omitted). The practice opposed by the employee need not actually be unlawful, as long as the employee subjectively believed it was unlawful and the "belief was objectively reasonable in light of the facts and record present." *Id.* (quotation marks and emphasis omitted).

The DA's Office argues that Ms. Jeter's complaint to the Chief Deputy District Attorney was not statutorily protected conduct because she was opposing an alleged violation of the Fair Labor Standards Act, not a practice made unlawful by Title VII. (Doc. 35 at 10–12). But Ms. Jeter has alleged facts that, if true, could establish that the decision not to allow her to accrue comp time was motivated by her race, and she has alleged that she complained to the Chief Deputy that this conduct was race discrimination. (Doc. 31 at 3 ¶ 11, 4 ¶¶ 20–21, 7 ¶ 36, 10 ¶ 53). At the dismissal stage, these allegations are enough to state a plausible claim that Ms. Jeter's complaint to the Chief Deputy was in opposition to race discrimination.

Next, the DA's Office argues that Ms. Jeter cannot establish causation because (1) the black rat cutout was not harassment, but was instead a Halloween decoration; and (2) her termination occurred five months after she complained to the Chief Deputy. (Doc. 35 at 12–13). As discussed above, the court cannot accept the

11

DA's Office's alternative explanation for the black rat cutout's placement at Ms. Jeter's door, because accepting that alternative explanation would be an inference in the DA's Office's favor, instead of in Ms. Jeter's favor. As for the time gap between Ms. Jeter's complaint and her termination, the DA's Office cites only cases addressing whether a plaintiff has presented sufficient evidence of causation to survive summary judgment (doc. 35 at 13), not whether the plaintiff had adequately alleged facts supporting causation at the dismissal stage. Under the lenient standard of review applicable at this stage, Ms. Jeter has alleged a plausible causal connection between her complaint to the Chief Deputy and her termination.

Finally, the DA's Office argues that Ms. Jeter cannot satisfy the *McDonnell Douglas* test for Title VII retaliation cases because she has not alleged facts establishing a prima face case of retaliation and the DA's Office had legitimate reasons to terminate her employment. (Doc. 35 at 11–14). In the Eleventh Circuit, a complaint "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case. This is because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (citation omitted). Although facts satisfying the *McDonnell Douglas* test would suffice to state a claim, *see Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296–97 (11th Cir. 2021), the failure to allege facts satisfying the *McDonnell Douglas* test does not necessarily

defeat a claim at the dismissal stage. Moreover, the court cannot accept the DA's Office's allegations about its reasons for its employment decision when those allegations come from outside the four corners of the complaint. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint.") (quotation marks omitted). Accordingly, the court **DENIES** the motion to dismiss Ms. Jeter's Title VII retaliation claim.

2. Section 1981

Ms. Jeter also asserts claims for race discrimination and retaliation under 42 U.S.C. § 1981, arising from the same facts as her Title VII claims. (Doc. 31 at 5–12). Section 1981 prohibits intentional discrimination "in private employment on the basis of race." *Johnson v. Ry. Express Agency*, 421 U.S. 454, 4659–60 (1975). Section 1981 also "encompasses claims of retaliation." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). As a general rule, claims brought under Title VII and § 1981 "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

The DA's Office contends that Ms. Jeter does not state a § 1981 race discrimination claim because she was an at-will employee with no contractual right to accrue overtime. (Doc. 35 at 15–16). "To state a claim of race discrimination under § 1981, a plaintiff must allege facts establishing: (1) that [she] is a member of

13

a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171–72 (11th Cir. 2016) (alteration accepted) (quotation marks omitted). Ms. Jeter has alleged that she is African American and that the DA's Office denied her the ability to accrue overtime leave while permitting Caucasian employees to continue accruing overtime leave. That is sufficient to allege a plausible claim of race discrimination under § 1981.

Next, the DA's Office contends that Ms. Jeter cannot state a claim for § 1981 retaliation because she has not alleged facts establishing race discrimination. (Doc. 35 at 16). Because the DA's Office's arguments in support of dismissing the race discrimination claim fail, so too does this argument. Accordingly, the court **DENIES** the motion to dismiss Ms. Jeter's § 1981 claims.

### III.   CONCLUSION

The court **DENIES** the motion to dismiss.

**DONE** and **ORDERED** this August 24, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE