FILED
2022 May-31 PM 12:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LANITRA JETER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 2:20-CV-01863-ACA |
| | ) |
| **JEFFERSON COUNTY** | ) |
| **DISTRICT ATTORNEY'S** | ) |
| **OFFICE,** | ) |
| | ) |
| **Defendant.** | ) |

## AFFIDAVIT OF JUDY YATES

COMES NOW the Affiant and, after being duly sworn, testifies as follows:

1. My name is Judy Yates. I am over the age of nineteen (19) years, am competent to testify to the matters discussed herein, and have personal knowledge of the matters testified to herein.

2. I am the victim services officer ("VSO") supervisor for the Jefferson County District Attorney's Office (the "DA's Office"). I was in that role during all of Lanitra Jeter's ("Ms. Jeter") employment. I was Ms. Jeter's direct supervisor. Ms. Jeter's next-level supervisor after me was Chief Deputy District Attorney Joe Roberts. Her next-level supervisor after that was District Attorney Danny Carr.

3. While Ms. Jeter was employed, normal VSO hours were either 7:30 AM to 4:30 PM or 8:00 AM to 5:00 PM. A VSO had to get permission to clock-in before 7:30 AM. If the VSO's approved time sheet shows that she clocked-in before 7:30 AM, then she had my permission to do so.

4. Micheal McCurry is the DA's Office's chief administrator. In September of 2019, Micheal McCurry informed me that there were problems with Ms. Jeter's use of leave and that she should not be allowed to earn comp time for a while. This was around the same time that I had found out that Ms. Jeter had lied to me about using comp time to attend, what she claimed, was a mediation in a case involving her husband and his ex-wife. After returning to work, Ms. Jeter had told me that she had gotten into a physical altercation with the ex-wife at the mediation and had to be placed in handcuffs. Michael McCurry and I spoke with the judge in the case, and were told that there had been no mediation and no physical altercation either. Ms. Jeter had made up the story and lied to me.

5. On September 23, 2019, I told Ms. Jeter she could not earn comp time for a week and that we would revisit the issue after that. That same day, after I told Ms. Jeter that she could not earn comp time, Ms. Jeter told me she had a doctor's appointment scheduled for later that day and needed to take off from work for it. She had not mentioned this appointment

to me before. I told her that it was fine for her to go, but that she needed to bring a doctor's excuse when she returned. Ms. Jeter took off work and brought back a doctor's excuse when she returned. That doctor's excuse, which is labeled DA 0081, is attached to this Affidavit.

6. I told Ms. Jeter to bring a doctor's excuse because she had lied to me about her use of comp time the week before. By September 23, 2019, I knew that there had been no mediation and no physical altercation either. Since Ms. Jeter had made up the story and lied to me, I did not trust her when told me on September 23 that she had a doctor's appointment. That is why I told her to bring back a doctor's excuse.

7. The DA's Office typically puts Halloween decorations up around the office. I often put the Halloween decorations up in the area where the VSO offices are located. These decorations include pictures of witches, black spider cutouts, black cat cutouts, and black rat cutouts. I had been doing this in Halloweens prior to the one in 2019. Pictures of the decorations I put up for Halloween in 2018 (i.e., the Halloween before Ms. Jeter was hired) are attached to this Affidavit. Those pictures show the types of decorations I usually put out, including black rat cutouts.

8. I put a cutout of a black rat near Ms. Jeter's door the week of Halloween. I did that on October 28, 2019, the beginning of Halloween

week, because she did not have any Halloween decorations near her office. I had previously placed similar black rat cutouts, as well as other decorations, in other areas near the VSO offices.

9.   I did not place any decoration near Erin Barefield's office because she already had a decoration on her door. You can see the decoration in the pictures that Ms. Jeter took on October 28, 2019. I placed a decoration on the baseboard near Elise Driskill's office, but I do not remember what I put there. I also had decorations inside my office, including black rat cutouts. Right after Halloween, I took down all of the decorations I had put up, including the cutout above Ms. Jeter's nameplate.

10.  Ms. Jeter did not complain about the cutout to me, and no one else complained to me about it. I certainly was not trying to offend Ms. Jeter or suggest that she was a black rat. I would have taken the cutout down if I had known she was offended by it, but she never said anything about it to me. She could have taken it down if she was offended by it, but she did not do that, either.

11.  I understand that Ms. Jeter testified in her deposition that she met with District Attorney Danny Carr and complained that not being able to earn comp time was discriminatory. I was not aware of her ever meeting with District Attorney Danny Carr for any reason and I certainly was not

aware of her ever complaining to District Attorney Danny Carr about any alleged discrimination. If Ms. Jeter actually met with District Attorney Danny Carr, I was never told about it and never learned about it.

**<u>FURTHER AFFIANT SAYETH NOT</u>**

_____
Judy Yates

STATE OF ALABAMA      )
COUNTY OF JEFFERSON   )

Before me, a Notary Public, personally appeared Judy Yates on this ___19th___ day of May, 2022, and who, after being informed of the contents of the above, affirmed that it is true and accurate to the best of his knowledge.

_____
NOTARY PUBLIC

My commission expires: __Feb. 13, 2023__



833 St. Vincent's Drive Suite 300
Birmingham, Alabama 35205
Phone: (205) 933-4640
Fax: (205) 933-4429

09/23/2019

**To Whom It May Concern:**

Lanitra F. Jeter was a patient at Southview Medical Group, PC on 09/23/2019 for prescroption and referral.   Lanitra may return to work/school with the following restrictions:

- **no restrictions**

If you have further questions regarding this patient's health status, please contact us at (205) 933-4417.

Form completed by:   Stowes





DA001149







DA001152