FILED

2022 Jul-20  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **LANITRA JETER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 2:20-CV-01863-ACA** |
| | ) |
| **DANNY CARR, in his official** | ) |
| **capacity as District Attorney** | ) |
| **of Jefferson County,** | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
THE MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Danny Carr, in his official capacity as Jefferson County District Attorney ("DA Carr"), and files this reply to Plaintiff Lanitra Jeter's ("Ms. Jeter") Memorandum Brief in Opposition to the Motion for Summary Judgment ("Opposition Brief") [Doc. 83].

**I.   Response to Plaintiff's Additional Undisputed Facts**

5.   Admitted, but Judy Yates and Cheryl Black were the only victim service officers ("VSOs") for almost 20 years before Ms. Jeter and others were hired in 2019.  Ex. A [Doc. 78-1] at 24:14–25:9, 29:6-12.  Only four African Americans have applied to be a VSO (all since 2019), and Judy Yates has hired two of them.  *Id.* at 25:11–26:16, 29:6-12.

8.      Admitted, but DA Carr left the final hiring decision to Judy Yates for the 2020 hires.  Ex. A [Doc. 78-1] at 28:5–29:15, 32:7-20.

9.      Admitted VSOs could earn comp time with permission, but denied comp time allowed VSOs "to gain the flexibility to take additional time out of the office day for personal use" because the cited testimony does not say or suggest that.  Ex. D [Doc. 78-4] at 70:11–71:8.

10.     Admitted, but the cited testimony refers to *accrued* comp time.

11.     Partially denied: there was a discretionary element to allowing an employee to use accrued comp time. Ex. A [Doc. 78-1] at 151:17–152:9.

12.     Partially denied:  Judy Yates encouraged new VSOs to start *earning* comp time when they started.  Ex. A [Doc. 78-1] at 149:14–150:22.

14.     Admitted, but she also used comp time for her husband's medical issues and to attend a mediation that did not actually occur.  Ex. C [Doc. 78-3] at 57:6-12 and at plaintiff's exhibit 1 thereto at DA 0085, DA 0318, and DA 0319; Ex. G [Doc. 78-8] at ¶ 18; Ex. I [Doc. 78-10].

15.     Partially denied:  Ms. Jeter does not cite any evidence regarding her FMLA eligibility.  *See* Initial Order [Doc. 33] at p. 18.

17.     Partially denied: Michael McCurry noticed Ms. Jeter's routine use of leave by late summer of 2019 and had been telling Judy Yates for

several months that something needed to be done about it.  Ex. A. [Doc. 78-1] at 178:15-23; Ex. G [Doc. 78-8] at ¶ 9.

19.    Partially denied:  Ms. Jeter did not say her comp time use was "primarily" due to doctors' visits or that VSOs "regularly" used comp time for hairstyling appointments.  Ex. C [Doc. 78-3] at 46:1-11, 57:6—58:12.

20.    Partially denied:   Ms. Jeter said she mentioned race in the meeting, but said she called the meeting to get an explanation and tell them why she was using her comp time.  Ex. C [Doc. 78-3] at 57:4-10, 58:13-23.

23.    Partially denied:  she did not say she mentioned Judy Yates or Micheal McCurry in the meeting.  Ex. C [Doc. 78-3] at 32:10-23, 34:2-14.

24.    Denied as stated. DA Carr assumed, for summary judgment purposes, that the meeting occurred.  Summary Judgment Brief [Doc. 79] at p. 15 n.3.  DA Carr did not mention "his practice;" he testified about what a "higher-up" should do if notified by an employee that a specific supervisor has discriminated against the employee.  Ex. D [Doc. 78-4] at 82:9–83:10.

25.    Denied as stated.  Michael McCurry told Ms. Jeter to talk to Judy Yates about earning comp time again, and *Ms. Jeter* then initiated a conversation with Judy Yates about it on November 12.  Ex. C [Doc. 78-3] at 62:2–63:17.  Judy Yates had to give permission to clock-in before 7:30 AM, and a VSO had permission if her time sheet shows she clocked-in early.

3

Ex. J [Doc. 78-11] at ¶ 3.  For the rest of her employment, Ms. Jeter clocked-in early more than any other VSO and earned more comp time than any VSO other than Elise Driskill.  Ex. G [Doc. 78-8] at ¶¶ 24-25, 30-32.

26.    Partially denied:  Ms. Jeter does not cite any evidence for the statement about her belief about the fairness of the alleged "continuing restrictions on her use of comp time[.]" *See* Initial Order [Doc. 33] at p. 18.

27.    Partially denied:  Joe Roberts' emailed response does not mention coming to him as "a last resort."  Ex. E [Doc. 78-6] at 49:2-17.

29.    Admitted, and Judy Yates did a September 20, 2019 memo to file about the VSO training Ms. Jeter was not allowed to attend.  *See* Ex. C [Doc. 78-3] at plaintiff's exhibit 1 thereto at DA 0082.  Between November 12 and November 21, Judy Yates allowed Ms. Jeter to clock-in before 7:30 AM once and Ms. Jeter had earned 5.25 hours of comp time.  Ex. G [Doc. 78-8] at ¶ 25 and at DA 0128 attached thereto; Ex. J [Doc. 78-11] at ¶ 3.

30.    Admitted that Judy Yates wrote memos to file about Ms. Jeter after November 12, but the cited testimony does *not* say the majority were after that time.  *See* Ex. A [Doc. 78-1] at 171:17-172:4.  Judy Yates maintained files on all VSOs.  *Id.* at 194:20–195:14.

32.    Partially denied:  all VSOs, including Ms. Jeter, had to have permission to clock-in before 7:30 AM.  Ex. J [Doc. 78-11] at ¶ 3.  Between

November 12 and January 8 (i.e., the day before the cited memo), Judy Yates allowed Ms. Jeter to clock-in early 7 times. Ex. G [Doc. 78-8] at ¶ 25.

35.     Partially denied: the COVID-19 staffing plan was to minimize staff physically present in the office at any one time by using rotating small groups of employees, only one VSO would be physically present in the office at any one time, and the identity of that VSO would change day-to-day.  Ex. D [Doc. 78-4] at 237:7–239:1; Ex. E [Doc. 78-6] at 67:13–68:7.

36.     Partially denied: the position was not eliminated because new VSOs were hired later in 2020.  Ex. A [Doc. 78-1] at 27:14–28:9.

37.     Partially denied:  the memo does not date the absences. *See* Ex. D [Doc. 78-4] at exhibit 7 thereto.  From November 12 until her termination, Ms. Jeter was the only VSO who exhausted all her available vacation and sick leave and almost all her accrued comp time.  Ex. G [Doc. 78-8] at ¶ 37.

38.     Partially denied: Ms. Jeter's lack of credibility *was* substantiated. *See* Ex. A [Doc. 78-1] at 121:1–122:9 and at exhibit 23 thereto; Ex. C [Doc. 78-3] at plaintiff's exhibit 1 thereto at DA 0318, DA 0319; Ex. D [Doc. 78-4] at exhibit 3 thereto; Ex. G [Doc. 78-8] at ¶ 18.

39.     Admitted, but Joe Roberts asked for the memo because he and DA Carr had had conversations about the ongoing issues with Ms. Jeter and

5

he wanted to have something to refer to and have specific discussions regarding termination.  Ex. E [Doc. 78-6] at 69:4-18.

42.    Partially denied: the cited testimony does not say what "actual attendance records" show.  *See* Ex. A [Doc. 78-1] at 209:9–210:10. For the first six months of employment *and* from November 12 until her termination, Ms. Jeter was the only VSO to exhaust all vacation and sick leave and almost all accrued comp time.  Ex. G [Doc. 78-8] at ¶¶ 15-17, 37.

43.    Partially denied: from November 12 until her termination, Ms. Jeter was the only VSO to exhaust all her vacation and sick leave and almost all her accrued comp time.  Ex. G [Doc. 78-8] at ¶ 37.

44.    Denied.  Joe Roberts could not tell the dates of the incidents by looking at the memo, did not recall Judy Yates telling him any event had "just happened" relative to March of 2020, and did not testify about what DA Carr believed.  *See* Ex. E [Doc. 78-6] at 95:16–96:4.

II.    **Ms. Jeter has abandoned most of her claims.**

Ms. Jeter previously claimed she suffered racial discrimination and was retaliated against in ways other than termination.  *See* Third Am. Compl. [Doc. 61]; Ex. B [Doc. 78-2] at Resp. Nos. 6, 9.  She now abandons all of her claims other than retaliatory termination.  Opposition Brief [Doc.

83] at p. 18 n.1. She also does not dispute DA Carr's Eleventh Amendment immunity to her § 1981 claims. *See generally* Opposition Brief [Doc. 83].

## III.    No causal connection between the DA Carr meeting and the termination.

Given the five month gap between Ms. Jeter's November 12 meeting with DA Carr and her termination in March, Ms. Jeter argues that the COVID-19 staffing plan in March was the first opportunity to retaliate. That ignores that the issues with Ms. Jeter's employment continued after the November meeting and up until March. It also ignores that it was usual for an employee to have issues that persist for a while before DA Carr would decide to terminate. *See* Ex. E [Doc. 78-6] at 98:18–100:1.

## IV.    Ms. Jeter has not shown pretext.

Ms. Jeter argues that DA Carr denied meeting with Ms. Jeter, which calls into question his explanation for why she was terminated. That ignores that DA Carr *assumed the meeting occurred for summary judgment purposes*. There is no dispute of fact about whether the meeting occurred or competing positions on whether the meeting occurred.

Ms. Jeter also questions Judy Yates' credibility about whether she knew about Ms. Jeter's meeting with DA Carr. Judy Yates testified she was not aware of the meeting, which Ms. Jeter admits is "unrebutted by testimonial evidence[.]" Opposition Brief [Doc. 83] at 24. Evidence Judy

Yates *could have* been told about the meeting is not the same as evidence she *was* told. *Martin v. Fin. Asset Mgmt. Sys.*, 959 F.3d 1048, 1054 (11th Cir. 2020). Ms. Jeter argues Judy Yates is not credible because Ms. Jeter's ability to earn comp time was restored on November 12, the same day as the meeting. Ms. Jeter testified Michael McCurry told her to talk to Judy Yates about earning comp time again, and that *she* then initiated a conversation with Judy Yates on November 12 about earning comp time. Ex. C [Doc. 78-3] at 62:2–63:17. Ms. Jeter resumed earning comp time after *she* asked Judy Yates about it; not the other way around. There is no evidence Judy Yates knew about Ms. Jeter's meeting with DA Carr, and Ms. Jeter cannot create a dispute of fact by contradicting her own statements on the record. *Bailey v. Metro Ambulance Servs.*, 992 F.3d 1265, 1279 (11th Cir. 2021).

Ms. Jeter argues Judy Yates had reason to think Ms. Jeter's November 21 email to Joe Roberts referred to Ms. Jeter's complaints of racial bias. Ms. Jeter never specified what was she was complaining about in the email and never spoke to Judy Yates about that complaint (or otherwise complained to Judy Yates about comp time) after she sent Joe Roberts the email (even after telling Joe Roberts she would). Ex. A [Doc. 78-1] at 42:20–43:3, 45:1-8; Ex. C [Doc. 78-3] at 71:3-11; Ex. E [Doc. 78-6] at exhibit 26 thereto. There is *no* evidence Judy Yates connected Ms. Jeter's email to comp time: she

speculated it might be about not getting to attend VSO training back in September of 2019, which Judy Yates had documented at the time. *See* Ex. C [Doc. 78-3] at plaintiff's exhibit 1 thereto at DA 0082; Ex. D [Doc. 78-4] at exhibit 5 thereto. That is why Judy Yates had documented training opportunities made available to Ms. Jeter since September. *See* Ex. A [Doc. 78-1] at exhibits 24 and 25 thereto; Ex. D [Doc. 78-4] at exhibit 5 thereto.

Ms. Jeter argues the statements about Ms. Jeter abusing time in the March 13, 2020 memorandum are contradicted by attendance records after November 12. Actually, those records *confirm* that from November 12 until her termination, Ms. Jeter was *the only VSO* who exhausted all her available vacation and sick leave and almost all her accrued comp time. Ex. G [Doc. 78-8] at ¶ 37. That continued Ms. Jeter's trend of exhausting leave seen during the first six months of her employment. *Id.* at ¶ 15.

Ms. Jeter argues DA Carr gave shifting explanations for why Ms. Jeter was terminated because he did not mention the COVID-19 staffing plan until near the end of his deposition. DA Carr anticipated a question about anything he considered other than the items in the March 13, 2020 memorandum when making the termination decision, at which point he would have talked about the COVID-19 staffing plan factoring into his decision. Ex. D [Doc. 78-4] at 244:8-22, 246:14-21, 248:11-19. DA Carr

did not get that question on direct. *Id.* at 246:14-21, 248:11-19. Ms. Jeter also says DA Carr omitted mentioning COVID-19 staffing in his initial disclosures and written discovery responses, neither of which Ms. Jeter submits as evidence. The initial disclosures do not contain *any* explanation for why Ms. Jeter was terminated, and the supplemental response to Ms. Jeter's Interrogatory 20 specifically mentions the COVID-19 staffing plan as a factor for why Ms. Jeter was terminated.

Finally, Ms. Jeter cannot avoid summary judgment using the mosaic theory.[1] Some of her purported mosaic evidence (i.e., that the grounds for termination were inaccurate, credibility issues, and the age of some of Ms. Jeter's employment problems) is addressed above. As to Ms. Jeter's other mosaic evidence, Judy Yates kept files on all VSOs, not just Ms. Jeter. Ex. A [Doc. 78-1] at 194:20–195:14. Ms. Jeter was the only VSO terminated in the COVID-19 staffing plan because no one else presented the potential problems that an unsupervised Ms. Jeter posed if she were the only VSO in the office. Ex. D [Doc. 78-4] at 244:8-22, 250:23–251:5.

DA Carr is entitled to summary judgment on Ms. Jeter's retaliatory termination claim and all her now-abandoned claims.

---

[1] *See Berry v. Crestwood Healthcare L.P.*, 2021 U.S. Dist. LEXIS 236848, *23 n.1 (N.D. Ala. 2021) ("The Eleventh Circuit has not in binding precedent decided whether a convincing mosaic of circumstantial evidence of retaliation can defeat summary judgment on a Title VII retaliation claim.").

Respectfully submitted,

/s/ James E. Murrill, Jr.
Robert R. Riley, Jr. (ASB-0909-168A)
James E. Murrill, Jr. (ASB-4329-A57M)

OF COUNSEL:
**RILEY & JACKSON, P.C.**
3530 Independence Drive
Birmingham, Alabama 35209
(205) 879-5000 *telephone*
(205) 879-5901 *facsimile*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2022, a copy of the foregoing was electronically filed with the Clerk of the Court using the Pacer system, which sends notification of such filing to the following counsel of record in this cause:

Brian O Noble
CAPSTONE LAW, LLC
3105 Sunview Drive
P.O. Box 43888
Vestavia, AL 35243
brian.noble@caplawllc.com

Artur Davis
HKM EMPLOYMENT ATTORNEYS
3355 Lenox Road, NE
Atlanta, GA 30326
adavis@hkm.com

/s/ James E. Murrill, Jr.
OF COUNSEL